JOHNSTONE, Justice.
Coastal Bail Bonds, Inc., appeals from the judgment of the trial court finally forfeiting the $250,000 in consolidated bail bonds that Coastal posted for Giusseppe Pino Loporto. On July 3, 1996, Coastal, acting as a surety for Loporto, signed and filed, in the Baldwin County District Court, the three consolidated bonds totaling $250,000 for Loporto’s release. Two of the consolidated bonds were in the sum of $100,000 each for charges of sodomy in the first degree and rape in the first degree, and the third bond was in the sum of $50,000 for the charge of sexual abuse in the first degree.
On July 29, 1996, the grand jury issued an 11-count indictment against Loporto for the alleged rape, sodomy, and sexual abuse of his daughter. The indictment was filed in the Baldwin County Circuit Court in case number CC-96-1207. Defense counsel filed a motion to dismiss the indictment or, in the alternative, a motion for a more definite statement; and the circuit court granted the motion for a more definite statement on September 4, 1996. The circuit court ordered the State to “provide the defendant the date or date-range and place of each count in the indictment.” (Case Action Summary Sheet at p. 1.) On December 19, 1997, in the last of several efforts to comply with the more-definite-statement order, the State moved to amend the 11-count indictment and to adopt a 28-count indictment that the grand jury had returned in November 1997. The new indictment charged Lopor-to with 28 counts of rape, sodomy, and sexual abuse involving his same daughter, and each count specified a time period when, and a location where, the alleged sexual offense occurred. With the consent of the defendant, the circuit court granted the State’s motion and treated the new 28-count indictment as an amendment to the original 11-count indictment and not as a different or separate case against the defendant. The circuit court also ordered that the $250,000 in bonds issued by Coastal “be applied to” the 28-count indictment “with the consent of the bonding company.” (Defendant’s exhibit 7.) Coastal did not expressly consent in court, and, indeed, objected outside of court in a discussion with defense counsel. Coastal, however, did not file in court any objection to the application of the bonds to the new indictment until after the bonds had been conditionally forfeited for Loporto’s failure to appear.
On April 13, 1998, the date Loporto’s trial was scheduled to begin, Loporto did not appear in court. The circuit court issued an alias warrant for Loporto’s arrest and a conditional forfeiture of the bonds. Coastal filed a “motion to dismiss bond” on the principal ground[1] that Coastal did not consent to the application of the $250,000 in bonds to the 28-count indictment, which, Coastal argued, increased its risk.
At a forfeiture hearing, Don Bolton, Lo-porto’s lawyer, testified that, after the original indictment against Loporto was amended, he telephoned Coastal and informed its representative, Johnny Hinote, of the new indictment and the court order *435 to transfer or to apply the bonds to the new indictment. He further testified that Hinote told him Coastal would not consent to allow the $250,000 in bonds to cover Loporto with regard to the new indictment. However, Bolton said, Hinote told Bolton that, “if Mr. Loporto was served with the new indictment and arrested, they would be happy to make the new bond, but would require a new fee.” Bolton stated that Loporto was never arrested on the new indictment, and, therefore, no new bond was sought or issued. Coastal never surrendered Loporto on any bond.
Hinote testified that, because the 17 additional charges in the 28-count indictment increased Coastal’s risk, Coastal did not consent to the application of the $250,000 in bonds to the 28-count indictment. Hi-note testified, however, that before the April 13, 1998 trial date, Coastal had consistently verified that Loporto was continually appearing in court as scheduled.
The circuit court found that, because Coastal had originally issued the consolidated bonds for Loporto’s release, Coastal’s liability as a surety continued “until [Loporto] may be discharged by the Circuit Court” on all the charges pending against him. Thus, the circuit court entered a judgment against Coastal for $250,000, the total of the three consolidated bonds posted for Loporto’s release.
Coastal argues before us that it “should be exonerated from liability on [its] surety bond when the [circuit] court allowed the indictment to be materially amended with new charges which substantially increased the surety’s risk without its consent.” (Appellant’s brief át p. 8.) Coastal contends that, because the 17 additional counts in the 28-count indictment “substantially changed” the nature of the charges against Loporto, Coastal was no longer obligated under the bonds.
Each of the three consolidated bonds posted by Coastal in this case was written on a form issued by the State of Alabama Unified Judicial System. Each contains the heading “CONSOLIDATED BOND (District Court, Grand Jury, Circuit Court).” Each bond states that the surety agrees to pay the State of Alabama the amount of the bond unless the named defendant appears before the district court or circuit court, “there to await the action by the grand jury and from session to session thereafter until discharged by law to answer the charge of [here each bond contains a blank completed, as appropriate, with either “Rape 1st,” “Sodomy 1st,” or “Sexual Abuse 1st”] or any other charge.”[2] (Emphasis added.) Each bond contains also the provision: “It is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated.”
Section 15-13-112, Ala.Code 1975, a part of the Bail Reform Act, provides that the Alabama Supreme Court “shall prescribe the different forms used for bail bonds and shall publish the forms in the Alabama Rules of Criminal Procedure.” Among the bail bond forms contained in the “Appendix of Bad Bond Forms” accompanying the Alabama Rules of Criminal Procedure are an “appearance bond” form (Form CR-11) and a “consolidated appearance bond” form (Form CR-10) very similar to the bonds issued by Coastal in this case. The wording of the consolidated appearance bond form is nearly identical to the wording of the appearance bond form, except that the consolidated bond form contains the following additional provision: '
“It is agreed and understood that this a consolidated bond, eliminating the necessity for multiple bonds and that it shall continue in full force and effect, *436 until the defendant appears before the District Court or Circuit Court, whichever has jurisdiction, to answer the above charge, and from time to time thereafter until the defendant is discharged by law, or, until such time as the undersigned sureties are otherwise duly exonerated as provided by law.”
(Form CR-10, “Appendix of Bail bond Forms,” Ala. R.Crim. P.) Thus, a consolidated bond eliminates the necessity for the defendant to post a new bond when he is formally indicted or when the indictment is filed in circuit court and obligates the surety on the bond to secure the appearance of the defendant in the district or circuit court where his case is pending until he is discharged or until the surety is otherwise exonerated according to the law.
Like the terms of the consolidated bond form, Rule 7.6(a), Ala. R.Crim. P., expresses the intent of this Court that an appearance bond, consolidated or not, apply to the generic charge against the defendant howsoever the form of that charge may be changed from time to time. That rule specifically provides:
“An appearance bond or release order issued to assure the defendant’s presence for proceedings following the filing of a complaint shall automatically be transferred to the same charge prosecuted by indictment, even though the complaint is superseded by return of the indictment, unless, upon issuance of the arrest warrant following indictment, the judge presiding, for good cause, shall order revocation or modification of the conditions of release.... ”
This rule was adopted because, in most cases, no good reason exists to revoke the defendant’s release, to rearrest him, and to require a new bond for another release. Committee Comments to Rule 7.6, Ala. R.Crim. P.
In the case before us, the generic statement of the charge written in each bond before the return of either indictment, for example “Rape 1st or any other charge,” subsumed the multiple specifications of that particular sex crime in the first indictment, and Coastal does not contend otherwise. Nothing in the bond form or in the law limited the State to a single opportunity to specify by way of indictment the charge generically stated in each bond. Thus the generic statement of the charge in each bond likewise subsumes the more elaborate and numerous specifications of that charge in the first indictment as amended by the incorporation or substitution of the second indictment.
In the case of Howie & Morrison v. State, 1 Ala. 113, 117 (1840), this Court holds that,
“Where ... the condition is to answer an accusation and not to depart until he shall be discharged by the court, ... a refusal to appear to a second indictment after a nolle prosequi on the first, after personal notice is a forfeiture of the recognizance.”
The implicit holding of Home & Morrison on this subject is that the nolle prosequi of the first indictment and the return of a second indictment does not void the recognizance (the bond or bonds) written as bail for the defendant on the underlying charge or charges but, rather, leaves the recognizance in full force and effect to bind the surety in the event of a forfeiture by the defendant’s failure to appear to respond to the second indictment. A fortiori, when, as in the case before us, the first indictment is not nolle prossed but, instead, is simply amended to restate the underlying charges as alleged in the counts of the second indictment, the second indictment does not void or avoid the bond, but, rather, leaves it in full force and effect; and the defendant’s nonappearance forfeits the bond.
The language in the quoted Howie & Morrison holding regarding personal notice does not affect the case before us inasmuch as Coastal does not argue the lack of any notice. In fact, Coastal admits its actual knowledge of the second indictment before the trial date and before the *437 defendant’s nonappearance. Moreover, notice to the defendant is imputed notice to the surety. United States v. Caro, 56 F.R.D. 16,19 (S.D.Fla.1972).
If the inclusion of more counts in the second indictment than in the first be considered a burden invalidly added to Coastal’s obligation without its consent, Coastal is nonetheless obligated on the bonds just as though the defendant had failed to appear on the trial date for trial on the original indictment. The Howie & Morrison Court so holds when it discusses an admittedly unauthorized “superadded condition” unrelated to the nolle prosequi of the first indictment or the return of the second indictment:
“It may be admitted, that the justice of the peace had no authority under the statute to impose on the recognizors the superadded condition, but it does not follow, that, thereby, the recognizance becomes void; it is merely inoperative as to the condition unauthorized by the statute and in its legal effect is precisely as if the additional words of condition were omitted.”
1 Ala. at 117.
Coastal’s argument that the bonds could not be applied to the new indictment without Coastal’s consent is unavailing for yet another reason. It is that Coastal, having full knowledge of the second indictment, neither filed any objection nor surrendered the defendant to the custody of the sheriff. Thus Coastal waived any objection of lack of consent.
A bail bond remains binding on the surety until the bond is voided, and the surety exonerated, by the happening of one of the following events or conditions: (1) the trial court discharges the defendant; (2) the surety surrenders the defendant to the custody of the sheriff and delivers to the sheriff a certified copy of the bond; (3) the surety surrenders the defendant in open court upon the entry of a final and complete sentence; or (4) the defendant dies. Hoime & Morrison, supra; All South Bonding Co. v. State, 496 So.2d 786 (Ala.Civ.App.1986); A-1 Bonding Co. v. State, 420 So.2d 778 (Ala.Civ.App.1981); Livingston Bail Bonds, Inc. v. State, 450 So.2d 129 (Ala.Civ.App.1984); and Swift v. Esdale, 293 Ala. 520, 306 So.2d 268 (1975). See also §§ 15-13-62, - 63, and — 64, Ala.Code 1975. In the case before us, Coastal did not surrender the defendant, and the trial court did not discharge him. Nor did the defendant die. For the nonoccurrence of any of these events or conditions and for all of the reasons already stated in this opinion, the bonds issued by Coastal remained binding on Coastal. The defendant’s nonappearance forfeited the bonds, and the trial court validly entered the judgment of final forfeiture after due hearing. Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.

. The only ground argued in brief.

. Yes, the form utilized by Coastal reads, "to answer the charge of_or any other charge." Virtually identical language is included in both Form CR-10 and Form CR-11 promulgated by the Alabama Rules of Criminal Procedure. See Rule 36.2, Ala. R.Crim. P.